We'll hear the next case on the calendar, Johnson v. UBS. Good morning, Your Honors. Jack Dweck on behalf of the trustees, Kathleen Johnson and Judith Woodard from the Dweck Law Firm, and my colleague and partner, Chris Frazier. Your Honors, when you're engaged in the practice of law for many years and a client comes to you and says, I'm supposed to get $4 million as a trustee of a trust from UBS. How do I go about doing it? My mother was a rather secretive person. I've discovered documents. I can't find the $4 million. I know it went to UBS and I can't find it. So I posture the question to each of you, what would you do if you were in that situation? Judge Droney, Judge Katzman, Judge Chin, what do you tell a client when the client comes to you and says, I'm entitled to this money. How do I go about getting it? We have before us two issues. You have the issue of jurisdiction over UBS and we have the issue of the statute of limitations. I respectfully suggest to each of you that the level of frustration that has been experienced by Kathleen Johnson is unparalleled. But I understand and am empathetic with the situation that you find yourself in or your client finds yourself in. There are certain rules of the road that we have to adhere to. And so if I could ask you to walk us through the due process limitations on personal jurisdiction. As I understand it, and correct me if I'm misunderstanding, UBS AG has its headquarters in principal place of business in Switzerland. And so doesn't that create a problem for you in light of recent Supreme Court decisions as to, there doesn't seem to be general jurisdiction over UBS in New York. And you say in your brief that there's specific jurisdiction because the claims in the case relate to UBS's U.S. contacts. But those contacts were not in New York but in California. So my question is, how can you meet the due process limitations for personal jurisdiction? It's a great question and I think I have a great answer for you, Judge Katzman. What do you do when you do a search and you find from the county clerk's office, and it's in the record before you, that UBS owns a building at 1285 Avenue of the Americas. It's a multi-story, multi-million dollar building. They file a petition with the Supreme Court and they allege that they're a domestic corporation. What do you do when you find in doing a further search that UBS brings an action in the Supreme Court in New York County? Didn't Daimler change the law in under Daimler except in exceptional cases? It has to be the place of incorporation or the principal place of business. That's what Daimler says. Yes, Judge Chin, except for one thing. And so the company's not, UBS is not incorporated in New York and New York is not its principal place of business. Do you agree with that? No. You don't agree with that? No, I agree with you that UBS has claimed it's a Swiss corporation, despite the inconsistency in their sworn petition that they're a domestic corporation. I do not agree that UBS does not have itself subject to general jurisdiction in New York because it's all over the place here in New York, as it is in the United States, which with a major presence here on a continuous and regular basis under international shoe. But following up on Judge Chin's question, there's the case of SPV OSIS Limited versus UBS AG, a 2018 Second Circuit case in which the court, it quotes Daimler, and the quote is, the Supreme Court has expressly cast doubt on previous New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum. And so that would seem to suggest that no matter how extensive UBS's businesses are in New York, that that's insufficient for personal jurisdiction unless the claim in the case arises out of that New York business. I can't say that the claim here arises out of New York business. That would be a specious statement on my part. I can say that UBS makes its home here in New York based upon the level of business on a continuous and permanent basis that it should be subjected to general jurisdiction in New York. If it's not subjected to general jurisdiction, what my client is relegated to doing is to try to go over to Switzerland to get information, to find out what happened to the $4 million? That's not going to be any different, Judge Chin. Money at least was, as I understand it, was transferred out of California. So there is at least a much better argument for personal specific jurisdiction in California. So what you're suggesting, Judge Chin, is I tell my client who's a resident of New York to go to California? I'm not suggesting anything. You were saying that that suit could only be brought in Switzerland. And I'm just asking you to consider whether a suit could be brought in California. California would be a possible forum, but UBS would come in and say, we're not here, we're a Swiss corporation. I have a sworn document that says UBS is a domestic corporation. Shouldn't I have at least have had a hearing on jurisdiction by the district court, Judge? I didn't get that. I tried to do the appropriate thing from a professional standpoint. I went twice into the Supreme Court and asked to have a pre-complaint hearing and deposition so that we could determine where we could bring a lawsuit, what the nature of the case was, what the documents are, what the discovery would yield. Denied both times. What I ended up with from counsel for the defendant was, well, she's got a judgment, she took a tax deduction for the money, and therefore, this is a specious claim. I'm sorry. We haven't collected a dime of that $4 million because we haven't been able to locate it. We haven't gotten any records. Whose account was it at UBS that the money went into? I'm sorry, Judge Roney? Whose account was the money transferred to from Citibank to the UBS? According to the transfer form on Citibank, the Swiss transfer went to UBS for the account of Annabelle Palmer. We don't know anything more than that. That document prima facie says Annabelle Palmer was the beneficiary of that account. I thought it was clear that Horisco got the money, no? We don't know. We don't know where it is, what happened to it. Can't get an explanation. We've been stonewalled. Judge Katzmann, if you had $4 million coming to you, what would you do under that circumstance? I'd be really thrilled at the thought of having $4 million. Anyway, that's... We're in a quandary with it. It's our role to ask the questions. Thank you for putting that in my head. What do I tell my client? How do I get to this money? How do I get information? If I can't get the money, at least tell me what happened to it. I can't get any information. Instead, the district court took what I consider to be an easy way out, saying it's a stale claim. It's not a stale claim. We have a continuous wrong here. There's no statute of limitations on it. You'll have, sir, two minutes and rebuttal. Thank you, Your Honor. May it please the Court, David Goldberg of the Katten-Muchin Law Firm on behalf of Appellee UBS. Your Honors, we raise four arguments in favor of affirmance. First, the lower court lacked personal jurisdiction over this matter, as Judge Hellerstein properly held. Second, Appellee's claims, are time barred, as Judge Hellerstein also correctly held. Third, Appellant failed to state cognizable claims under Rule 12b-6. Judge Hellerstein didn't reach that argument, but it's properly preserved for your review. And fourth, judicial estoppel bars Appellant's claims. That argument is also properly preserved for your review. On personal jurisdiction, Your Honors have it right. There was a wire transfer in 1998, 21 years ago, from California to Switzerland. Nothing happened in New York. UBS AG is a Swiss entity. That's in the record at A33. There's no general jurisdiction, as Judge Katzmann, you correctly noted. There's no specific jurisdiction, because as my adversaries just conceded, these claims, it would be specious to allege that these claims arose out of New York  What about the argument that says that if you look at New York registration statutes, they might provide general personal jurisdiction? Your Honor, the Second Circuit has not had the opportunity to rule on that. That's been an issue of some controversy. The Court addressed that issue in the Brown case as it related to a Connecticut registration statute. And the ruling there was that it would raise grave due process concerns, I'm paraphrasing, to allow a run-of-the-mill registration statute to create jurisdiction, especially in the wake of the change in law in Daimler. But the Court has not addressed that. Lower courts have found, in reliance on Brown, that a consent to jurisdiction by virtue of a registration statement would not pass muster under the Due Process Clause. But again, that has not yet been squarely in this Court. Continuing. It is somewhat counterintuitive, you know, with — I mean, there clearly is a strong presence in New York. I mean, why would there be a due process concern? Strong relative to what? I mean, we own property. Property, offices, real estate, employees. Daimler addressed these issues at great length and held, as Your Honor has correctly noted, that there's two circumstances under which, if your principal place of business is here, it is not. Appendix 33, that's not disputed. And two, if your place of incorporation is here, it is not. The Daimler case noted some, you know, real extraordinary circumstances where that might be different, and there was a case involving wartime conduct where a corporation had moved its presence during a place of war. But the — I don't think it's counterintuitive at all, frankly, to suggest that a corporation resides in the place where it resides. And personal jurisdiction is not properly asserted under general jurisdiction purposes merely because it does business here. That seems to be settled law at this stage. Isn't it, though, the case that, as the trustee says, that there are a number of cases where specific jurisdiction has been — has been asserted, where UBS has availed itself of the courts of New York? Counsel cites three examples. They're taken out of context. In one of the cases, there's a fragment of a — of a pleading where we — where UBS is seen to have said that its principal place of business in New York, in the United States, is in New York, or works to that effect. Another one was a tax matter. There hasn't been a consent to personal jurisdiction in this case. I mean, these are issues of constitutional magnitude, Your Honor. I would also note, to the extent we're talking about personal jurisdiction, and Your Honor brought up the SPV OSIS case from 2018, Judge Calabresi wrote a very interesting concurrence in that case. And what he said there is that a court, if it's inclined to rule in favor of the party that's asserting a personal jurisdiction defense, can find hypothetical jurisdiction and dismiss on other grounds. That doesn't violate Supreme Court precedent that otherwise counsels against the hypothetical assertion of jurisdiction. To the extent that the panel is in any way concerned about the assertion — the personal jurisdiction issues, it's easily circumvented by — by assuming jurisdiction and then ruling in our favor. The opposite is not true. A finding against UBS would not be — could not probably be famous after the assertion of hypothetical jurisdiction, because that would obviously be a deprivation. And we're not consenting to personal jurisdiction. Please don't hear me to be saying that. But what I am saying is, as Judge Calabresi said, is that there is a way forward if the opinion was to dismiss on the statute of limitations grounds. And if I may, I'll get to that briefly now. What about the continuing violation argument? Well, that would — that exception would swallow the rule. The notion here is that in 1998, there was a loss. Mr. Horisco defrauded Ms. Palmer, as the record seems to indicate. And that matter was adjudicated in a California proceeding where Appellant's counsel at the time — and Appellant was represented by counsel. She may have been secretive, but she had lawyers — said UBS was an innocent party. They did nothing wrong. The account, as Judge Stroni correctly asked, was not in Ms. Palmer's name. That was on a Citibank form, but it was not in Ms. Palmer's name. It was in the name of the fraudster's alter ego. And Appellant's counsel embraced that notion because they wanted the tax deduction. So they said that the — that UBS had done nothing wrong and that we're entitled to a tax deduction because we have no reasonable prospects of recovering the money. That dates to 2003 to 2010, almost a decade ago or more. So having pocketed that tax deduction and having received the benefit of that — that's Appellant — Appendix 109 is the California tax deduction, the actual tax return, and I believe it's on the Federal tax returns also, Appendix 99. Having pocketed the tax deduction and having taken a judicial position that UBS was an innocent party, Appellant now, a decade later, says, oh, forget about that. UBS did do something wrong. And so your question to me, I think, was about the continuing wrong violation. Apologies for digressing for a moment. But there was a constant stream of communication. In 98, in 2005, a letter was written, Appendix of 53, where a lawyer for Ms. Palmer asked UBS for a little bit of information, and UBS shut the letter down. And it shows that a concession, that this account was not Ms. Palmer's account. It's in the Appellant's counsel's own word. That's Appendix 53. Finally, to answer your question most directly, the continuing wrong violation here is premised on the notion that you haven't given us the money back. It's not that we did anything. There's no evidence in the record that we did anything since 2005 or something. It's our failure to do something. So that exception would swallow the rule that if you take money or receive money through a fraud that you either aided and abetted or who knows what, and you don't give it back, there is no statute of limitations, that every day that goes by is a continuing wrong. That's not the law. And I think I've mostly addressed the statute of limitations argument now. I mean, there was manifold opportunities for Ms. Palmer counsel. She was an elderly woman, no doubt, but she was represented by at least two counsel, as the record shows, a Bill Swearinger, who represented her in the California tax matter, and in her dealings with the fraudster, Mr. Horisco, and then by another lawyer who represented her vis-a-vis UBS AG in 2005, Appendix 53. So she had the benefit of counsel over a decade ago and could have brought her claims then against UBS if she thought we did something wrong. She made the strategic decision to say that we did nothing wrong so she could pocket the tax deduction. But how do you respond to the view on the statute of limitations issue that to resolve some of the claims, we'd have to look at documents that UBS, rather than the trustees, put into the record, and that wouldn't that lead to our having to convert a motion to dismiss into a summary judgment motion? Yeah. These are records from the California Taxing Authority for the most part. They're not disputed. I take your point, Judge Hellerstein saw fit to address that issue. It was not properly preserved for review because it was not argued to Judge Hellerstein properly. We think it's, this is not a controversial issue. All that was alleged in the complaint is that a wrong, a wire transfer happened in 1998. So they have a burden to allege, in the first instance, a timely claim. They didn't do that. And then I have, you know, arguments that I'll refer to my brief on that relate to the 12b-6 arguments, the notion that we were a fiduciary here, the notion that we breached a contract here. None of this is supported under 12b-6, and that would be another alternative grounds for affirmance. Thank you, Your Honors. Thank you. Mr. Weck. Your Honors, I respectfully have to suggest that Mr. Goldberg has misled you in his brief. The claim that, for the tax deduction, that UBS was an innocent party was not argued on behalf of Ms. Palmer. That was a statement made by someone from the tax commission, and I addressed that in my reply brief. Mr. Goldberg insisted on bringing it up. I find it very difficult to reconcile, on page 327 of the appendix, that UBS, A.G., as the petitioner, says, at all times here and after mentioned, the petitioner was and still is a domestic corporation and the owner of certain real property in the borough of Manhattan. That petition is sworn to by counsel based upon documents. Who do we believe? Aren't we entitled to the benefit of a doubt? With respect to the continuing violation, I alleged in the complaint and in the motion papers before Judge Hellerstein, the woman was 83 years old, Annabelle Palmer, and was suffering from the onset of dementia. The children, of which Kathleen Johnson was one of the daughters, discovered records after the dementia set in. They tried to reconstruct the situation. What about the letter in 2005? The letter was sent to her lawyer from UBS saying we don't owe you anything. How could there be a continuing violation after that? Because they didn't identify that the account was in another name. They just said we're not giving you any information, Judge Roney. And based upon that, that's a stonewall answer. We claim that she transferred in August 1998 through the services of Citibank the amount of United States dollars, $4 million, to an account at UBS AG. That seems like the case here, right? Except for one thing, Judge Roney. If you look at the transfer form from Citibank, the Swiss transfer says it's transferred for the account of Annabelle Palmer as beneficiary. At best, it's an inconsistency with the way you're perceiving it. Aren't we entitled to the benefit of the doubt? Do we walk away from $4 million, Judge Roney? You wouldn't. I sure wouldn't. I wouldn't. And Kathleen Johnson says I won't either. Thank you. Thank you very much. Thank you both for your arguments. The Court will reserve decision.